IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Andrew Butler, | ) | Civil Action No. 2:17-1350-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| | ) | |
| Pepperdam Construction Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 27) recommending that the Court grant Defendant's Motion for Summary Judgment (Dkt. No. 24). For the reasons set forth below, the Court adopts in part and declines to adopt in part the R & R and grants in part and denies in part Defendant's motion.

## I. Background

In brief, Plaintiff Andrew Butler was hired to work for Defendant, a construction company, on or about October 1, 2015, where he worked as a Supervisor. Plaintiff's duties included ordering materials, supervising a crew, giving assignments, and ensuring that the grading on projects was correct. On December 10, 2015, Plaintiff and a co-worker got into an accident in a company vehicle when another vehicle hit them from behind. While Plaintiff initially had few symptoms from the accident and was able to perform his job duties, by January 22, 2016, Plaintiff presented to a hospital emergency department complaining of a motor vehicle collision. Plaintiff had multiple appointments with medical professionals and therapists from January 22, 2016 to April 2016. As relevant here, Plaintiff received a doctor's report of work status on or about March 3, 2016, which indicated that Plaintiff should be restricted to left hand work, no lifting, no repeated bending/stooping, and no continual standing/walking/sitting. Plaintiff alleges he informed Jennie

Blanton, the Vice President, and Brian Blanton, Jennie's son who worked at the Defendant, of his limitations and a text exchange with Brian from May 25, 2016, seems to corroborate that Brian had knowledge of Plaintiff's medical issues. (Dkt. Nos. 25-1 at 5 – 6; 24-20.)

Regardless of the medical consultations and therapy, Plaintiff continued working after the accident. On or about May 26 or May 27, 2016,[1] Plaintiff was driving a company backhoe when he ran into another company vehicle. After the accident, Plaintiff was asked to take a urine test pursuant to company policy. Defendant refused. Plaintiff subsequently did not show up to work and Brian Blanton wrote to Plaintiff the following day that "I'm assuming you quit since you didn't show up today?," and reiterated on June 2, 2016, in a text "we had no plans to fire you, you quit." (Dkt. No. 24-20 at 9 – 11.) Plaintiff, however, testified that he was terminated by Jennie.

Plaintiff filed this action on May 24, 2017, alleging violations of the Americans with Disability Act, 42 U.S.C. § 12101, *et seq.* (hereinafter referred to, as amended, as "the ADAAA"). As explained by the Magistrate Judge, Plaintiff essentially brings two claims under the ADAAA: first, for a failure to accommodate; second, for retaliation for his requests for accommodation.[2] Defendants moved for summary judgment, and Plaintiff opposed. (Dkt. Nos. 24, 25.) The Magistrate Judged issued an R & R recommending that the Court grant summary judgment on both of Plaintiffs claims. (Dkt. No. 27.) Plaintiff filed objections. (Dkt. No. 28.)

---

[1] Texts attached to Brian Blanton's affidavit show that Plaintiff and Blanton were discussing a drug test, seemingly related to the accident, on May 26, 2017. (Dkt. No. 24-20 at 9.)

[2] Plaintiff, in his objections, notes those are the two causes of action he intended to plead. (Dkt. No. 28 at 1.)

## II. Legal Standard

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with

this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In the absence of any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Plaintiff filed objections and those portions of the R & R are reviewed *de novo*. Defendant did not file objections.

### III. Discussion

Plaintiff objects to the Magistrate Judge's recommendations regarding the second two prongs of his failure to accommodate claim, the Magistrate Judge's recommendations regarding the third prong of his retaliation claim and the recommendation that Defendant had a legitimate, nondiscriminatory reason for Plaintiff's termination.

#### A. Failure to Accommodate

To survive a motion for summary judgment on his failure to accommodate claim, Plaintiff must allege facts sufficient to create a genuine dispute of material fact with respect to the following elements: "(1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [his] disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; [and] (4) that the [employer] refused to make such accommodations." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387, n. 11 (4th Cir. 2001) *citing Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999).

Relying on the expanded definition of disability under the ADAAA, the Magistrate Judge found that, based on the doctor imposed lifting restriction, restriction to only left hand work,

-4-

restriction of repeated bending/stooping and continual standing/walking/sitting, Plaintiff showed a dispute of material fact regarding whether he had a disability under the ADAAA. *See, e.g., Bray v. Town of Wake Forest*, No. 5:14-CV-276-FL, 2015 WL 1534515, at *9 (E.D.N.C. Apr. 6, 2015) ("As an example of a 'sufficiently severe' temporary impairment, the regulations provide that, 'if an individual has a back impairment that results in a 20–pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability.'"). Neither party objected to this conclusion, and the Court agrees with the recommendation of the Magistrate Judge.

Second, neither party objects to the Magistrate Judge's finding that there is a dispute of material fact regarding whether Defendant had notice of Plaintiff's disability. The Court agrees with the Magistrate Judge. Specifically, while Defendant argues it did not have notice, Plaintiff alleges that he told both Jennie and Brian Blanton about the restrictions in his March 3, 2016 medical form, and a text exchange with Brian Blanton seems to indicate that Mr. Blanton had at least some knowledge of Plaintiff's disability. Therefore, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has satisfied the second prong of the failure to accommodate claim.

The R & R, however, found that Plaintiff could not make out the third prong since Plaintiff testified that he "did everything" when asked whether he was "able to perform his duties" "at all times" while he was employed by Defendant. (Dkt. No. 25-1 at 10.) The R & R relied on *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846 (7th Cir. 2015) to hold that, since Plaintiff was able to keep performing all aspects of his job, his limitations did not affect his essential functions and Pepperdam had no duty to accommodate. *See Hooper*, 804 F.3d at 852 (holding that employer had no duty to accommodate where employee's doctor found employee "was qualified for his position *without* accommodation") (emphasis in original) *citing Brumfield v. City of Chicago*, 735

F.3d 619, 632 (7th Cir. 2013) (holding where "employee's limitations do not affect her ability to perform those essential functions, the employer's duty to accommodate is not implicated.").

However, here, while Plaintiff testified that he did perform his job duties, he also was explicit that his disability affected his ability to perform those duties. Plaintiff testified that, after disclosing his disability, he was placed on job sites that had "more bending, more stooping, more lifting, more walking" and "less help." (Dkt. No. 25-1 at 10.) While Plaintiff described his job duties as "material ordering, crew supervision and implementation of assignments," it was clear from Plaintiff's description of his work day that the job involved significant bending, stooping, lifting and walking to perform those functions, the precise limitations imposed by his doctors. Further, because these were necessary to his essential duties, Plaintiff testified that his job was made harder by the lack of accommodation. (*Id.*, Plaintiff: "They made it worse. I mean, I didn't think it could get harder. It got harder.") Plaintiff's evidence of the exacerbation of his disability, which made his job more difficult, indicated that he could not perform his essential job functions fully absent a reasonable accommodation. *See Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018) (reversing grant of summary judgment on failure to accommodate where plaintiff's "job functions [] are made difficult and painful by his disability," as "[a] reasonable jury could conclude that forcing Hill to work with pain when that pain could be alleviated by his requested accommodation violates the ADA.")

The R&R also relied on the fact that Plaintiff failed to request an accommodation that was reasonable, since he requested "more laborers" to help him. As the Magistrate Judge noted, an accommodation that requires other employees to work harder or longer hours is not a reasonable accommodation. *See, e.g., Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995). To begin with, the limited testimony from Plaintiff on his requested accommodation does not indicate that

his accommodation would have required any employee to work harder or longer, and indeed, "an employer may be required to accommodate an employee's disability by 'reallocating or redistributing nonessential, marginal job functions,' or by providing an aide to enable the employee to perform an essential function without replacing the employee in performing that function." *Hill*, 897 F.3d at 240 *citing* 29 C.F.R. § Pt. 1630, App.

However, even if Defendant could not provide an additional laborer, Defendant has made no showing that, after Plaintiff's request, it engaged in any interactive process with him regarding his disability. Importantly, under the ADAAA, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 311–12 (3d Cir.1999) (emphasis added), *cited with approval by Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 316 (4th Cir. 2011). "In other words, ... the responsibility for fashioning a reasonable accommodation is shared between the employee and employer." *Taylor v. Principal Fin., Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996). Courts "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Crabhill*, 423 Fed. App'x at 323 *quoting Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996); *see also Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1138 (9th Cir.2001) ("[Defendant] denied her request without suggesting any alternative solutions, or exploring with her the possibility of other accommodations. Rather than fulfill its obligation to engage in a cooperative dialogue with [Plaintiff], [Defendant's] e-mail suggested the matter was closed.").

At the summary judgment stage, Plaintiff he has submitted evidence that would allow a jury to determine that he had requested an accommodation. Defendant has submitted no evidence that it considered, approved or in any way engaged in an interactive process with Plaintiff to

determine what would be an appropriate accommodation.[3] The fact that some reasonable accommodation exists that would allow him to perform his job is bolstered by the fact that Plaintiff testified that in his current job, where he works as a supervisor of civil contractors, his employer was able to make an accommodation to allow him to perform his job with his disability. (Dkt. No. 25-1 at 4.) Defendants were required to engage with Plaintiff to determine what accommodation was feasible to allow him to perform his essential job functions. Taking the evidence in the light most favorable to Plaintiff at the summary judgment stage, Plaintiff has raised a dispute of material fact regarding whether he could perform the essential functions of his position with a reasonable accommodation and whether, by not providing an accommodation and failing to engage with Plaintiff, Defendant refused to make such accommodation. Therefore, Defendant's motion for summary judgment as to Plaintiff's failure to accommodate is denied.

## B. Retaliation

The Court, however, agrees with the Magistrate Judge and finds that Defendant is entitled to summary judgment on Plaintiff's ADAAA retaliation claim. To establish a prima facie retaliation claim under the ADAAA, a plaintiff must allege facts to create a genuine dispute of material fact about whether (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected conduct and the adverse action. *See A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011).

As the Magistrate Judge ably found, Plaintiff is unable to demonstrate any causal link between the protected conduct and the adverse action. Plaintiff engaged in protected activity when he informed Defendant of his disability in March 2016. However, after informing Defendant of

---

[3] Defendant is clear that it asserts no challenge to whether it refused to make any accommodation, and instead relied solely on its argues that Plaintiff had no disability and no record of disability, and that Defendant had no notice of the disability. (Dkt. No. 26.)

his disability, he continued working, and only was terminated[4] on May 27, 2016, after refusing to take a urine test required by company policy after running into a company truck with a backhoe.[5]

Further, as explained by the Magistrate Judge, even if Plaintiff could show a causal connection, as found by the Magistrate Judge, Defendant had a legitimate, non-discriminatory reason for Plaintiff's termination based on his refusal to take a urine test. Plaintiff has not presented any evidence showing that Defendant's decision to require a urine test or that the putative termination based on a refusal to take a urine test was pretextual. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's Report and Recommendation (Dkt. No. 27) and the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Pepperdam Construction Company, Inc.'s Motion for Summary Judgment (Dkt. No. 24). Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for Retaliation under the ADAAA. Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's claim for Failure to Accommodate under the ADAAA.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March 21, 2019
Charleston, South Carolina

---

[4] Defendant claims Plaintiff quit, which is supported by text messages submitted as exhibits.

[5] Plaintiff also makes a conclusory allegation that a project manager possibly named "Mike" told him that he would be terminated if he continued to complain, seemingly regarding his requested accommodations. In addition to the allegation being conclusory, there is also no evidence indicating that Mike in any way affected, had input, or decided to terminate Plaintiff.